UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SOLENGO CAPITAL ADVISORS ULC,

    Plaintiff,

        v.

DEAD HORSE MEDIA LLC,
DEALBREAKER,
ELIZABETH SPIERS, JOHN CARNEY,
BESS LEVIN, JOHN DOE AND JANE
DOE,

    Defendants.

07 Civ. 2657
ECF Case

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF RELEVANT FACTS ................................................................................... 2

ARGUMENT .................................................................................................................................. 5

I.     The Jurisdictional Requirement Is Met Upon Submission of a Complete Application to the Copyright Office ................................................................................................... 5

    A.     Case Law Supports the View That the Court Has Jurisdiction .............................. 5

    B.     The Scholarly Commentary, Statutory Framework and Policy Considerations All Support the View That the Court Has Jurisdiction ............................................. 7

II.     Plaintiff Has Received a Certificate of Registration from the Copyright Office, Curing any Jurisdictional Defect to the Extent the Court Finds Such a Defect Exists ................. 10

CONCLUSION ............................................................................................................................ 12

Plaintiff Solengo Capital Advisors ULC ("Solengo"), by its attorneys Kobre & Kim LLP, submits this Memorandum of Law in Opposition to Defendants Dead Horse Media LLC, DealBreaker, Elizabeth Spiers, John Carney and Bess Levin's (collectively, "Dead Horse" or "Defendants") Corrected Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion to Dismiss").

## PRELIMINARY STATEMENT

This lawsuit stems from: (1) the unauthorized web-posting by Defendants, the operators of a Wall Street gossip Web site, of the entirety of the Solengo Investor Prospectus, a document containing highly confidential business information belonging to Solengo (the "Document"), in violation of federal copyright law; and (2) Defendants' persistent refusal to remove that posting despite repeated requests from Solengo's attorneys that they do so. To this day, Defendants have not denied either that the Document at issue is copyrighted or that they violated that copyright by posting the Document on their Web site for the world to see without Solengo's authorization.

Rather, the sole issue raised in the instant Motion to Dismiss is whether this Court has subject matter jurisdiction to hear this dispute in light of the fact that, at the time the complaint in this case was filed, the Copyright Office had not yet issued a Certificate of Copyright to Solengo (even though it has issued one now). For the reasons set forth below, we respectfully submit that the Court does have subject matter jurisdiction over the dispute regardless of when the certificate was formally issued, since, at the time the suit was commenced, Solengo had already submitted a completed application for registration with the Copyright Office. To the extent that the Court is inclined to find otherwise, we respectfully submit that, now that the Copyright Office has issued a Certificate of Copyright, the Court should either: (1) allow the case to proceed without

1

requiring a formal amendment of the complaint; or (2) grant Plaintiff leave to amend the complaint simply to reflect that the certificate has been issued.

## STATEMENT OF RELEVANT FACTS

Solengo is a recently launched investment vehicle that is structured to expand into a multi-billion dollar commodities fund. *See* Declaration of Brian Hunter dated March 30, 2007 (the "Hunter Declaration"), at ¶ 1.[1] Solengo's business model is centered in large part on certain novel approaches to its field. *See* Hunter Declaration, at ¶ 3. In or around mid-March 2007, Solengo circulated the Document to a limited number of potential investors. The Document essentially marketed Solengo's novel philosophy to those potential investors and contained confidential and proprietary information about its business plan that was not intended to be disseminated broadly. *See* Hunter Declaration, at ¶ 5.

Unbeknownst to Solengo, a copy of the Document somehow wound up in the hands of Defendants, who operate a self-styled Wall Street gossip Web site called Dealbreaker.com.[2] On the afternoon of Wednesday, March 28, 2007, Defendants posted the Document on that Web site. *See* Amended Complaint, at ¶ 19. Shortly thereafter, attorneys for Solengo informed Defendants by telephone and letter that the Document they had posted was copyrighted material that contained sensitive, confidential information and demanded that they remove it. *See* Amended Complaint, at ¶ 14; First Cogan Declaration, at ¶ 4, Ex. B.

Defendants, however, refused to remove the Document. *See* Amended Complaint, at ¶ 21. Instead, Defendants actually posted the letter from Solengo's counsel demanding the removal of the Document on their Web site along with: (1) associated commentary indicating

---

[1] The Hunter Declaration and the Declaration of Jonathan Cogan dated April 1, 2007 (the "First Cogan Declaration"), were submitted to the Court at the outset of this litigation.

[2] If this case proceeds to discovery, we intend to ascertain how the Defendants obtained this confidential document; however, at present, this information is not in the record.

2

that Defendants had told Solengo's lawyers to "suck it" in response to Solengo's legitimate demand that the Document be removed; and (2) various offensive comments apparently intended to deride the Asian-American nature of the name of the law firm representing Solengo. *See* First Cogan Declaration, at ¶ 5, Ex. C and D and Declaration of Jonathan D. Cogan dated June 25, 2007 ("Second Cogan Declaration"), at ¶ 3, Ex. C (comments to post "Solengo's Lawyers Strike Back: We Still Say Suck It" reading "Kobre/Kim?? Cobra Kai?? Is there mercy in this dojo? No, Carney!!!" (3/30/07 at 9:11 a.m.) and "If my name was Kobre or Kim and I was a lawyer starting my own firm, I would certainly not use the names kobre and kim as the name. pick something irish like fitzgerald." (3/29/07 at 6:22 p.m.)).[3] In addition, on March 29, 2007, Mr. Carney, one of the Defendants in this action, called counsel for Solengo to indicate that Defendants were unwilling to remove the Document from the Web site. *See* First Cogan Declaration, at ¶ 6. That same evening, Mr. Carney appeared on a television program on CNBC to promote, *inter alia*, the fact that Defendants had posted the Document. See First Cogan Declaration, at ¶ 7.

On March 30, 2007, Solengo, through its attorneys, submitted an application for registration of the Document with the Copyright Office, deposited a copy of the Document at the Copyright Office and paid the requisite registration fee. *See* Amended Complaint, at ¶ 18. That same day, Solengo's lawyers had two additional telephone conversations with Defendants (one with Defendant Levin and the other with Defendant Carney). *See* First Cogan Declaration, at ¶ 8. During those conversations, counsel again demanded that the Document be removed and indicated that Solengo intended to seek a temporary restraining order ("TRO") compelling its

---

[3] The racial insensitivity was not limited to references to the names of Solengo's lawyers. *See* Second Cogan Declaration, ¶ 4, Ex. D ("Solegno [*sic*] did a pretty good job of covering the cardinal stock photography cliches...But they missed the handshake and the flirty receptionist with the headset. If they're going after the arabs, they better make sure she's blonde." (3/31/07 at 12:37 a.m.)).

3

removal if Defendants did not agree to remove it themselves. Defendants refused and continued to post the Document on their Web site through the weekend. *See* Amended Complaint, at ¶ 21.

On Sunday, April 1, 2007, Solengo served on Defendants a copy of the complaint and TRO papers they intended to file the next day. On the morning of Monday, April 2, 2007, Solengo filed that complaint[4] and TRO application with the Court. Shortly thereafter, Defendants, through their counsel, indicated that they would finally agree to take the Document down and consent to the entry of an injunction that barred them from its further dissemination. That afternoon, the Court issued a Preliminary Injunction on Consent ordering Defendants to: (1) remove the Document from the Web site; and (2) refrain from posting or otherwise distributing the Document pending resolution of the action. Order for Preliminary Injunction on Consent, ¶¶ 1-2.

On May 24, 2007, Defendants filed the instant Motion to Dismiss[5] addressing the sole issue of whether the Court has subject matter jurisdiction over this case.

On June 7, 2007, Solengo received an official Certificate of Registration for the Document from the Copyright Office. *See* Second Cogan Declaration at ¶ 2, Ex. A.

---

[4] On May 10, 2007, Solengo filed an amended complaint upon learning that additional Defendant Dead Horse Media was a proper party to the action.

[5] Defendants filed a corrected Motion to Dismiss on May 30, 2007, rectifying the previous omission of Dead Horse Media LLC as Defendant.

## **ARGUMENT**

### I. **The Jurisdictional Requirement Is Met Upon Submission of a Complete Application to the Copyright Office**

We respectfully submit that this Court has subject matter jurisdiction over this case. As set forth below, the case law, scholarly commentary, relevant statutory framework and policy considerations all lend support to the view that a federal district court has jurisdiction over a claim for copyright infringement upon the submission of a completed application for registration of a copyright to the Copyright Office (which, in this case, occurred *prior* to the commencement of this lawsuit). Notwithstanding Defendants' assertions to the contrary, the better view of the law is that the issuance of a certificate of registration by the Copyright Office (which did not occur until after commencement of the lawsuit in this case) simply is not necessary to confer subject matter jurisdiction on the Court.

#### *A. Case Law Supports the View That the Court Has Jurisdiction*

Defendants' entire motion to dismiss is premised on their contention that "[t]he mere filing of the application for the copyright is insufficient to vest a federal court with subject matter jurisdiction; the copyright office must actually register or reject the work" before there can be jurisdiction. *See* Motion to Dismiss, at 3. In support of this proposition, Defendants cite to cases that have so held and then concede in a footnote that "[t]here are a handful of cases that have held that filing the application is sufficient to confer subject matter jurisdiction." *Id.* at 4, n. 2.

Defendants are correct that some courts that have addressed this issue have held that the copyright office must either accept or reject the application prior to the initiation of a copyright infringement lawsuit. However, the suggestion that only "a handful of cases" have held otherwise is, to say the least, a gross understatement. In fact, *many* courts (including courts in

5

this Circuit[6] and a number of other jurisdictions) have held that the Copyright Office need not pass on the application before a court has subject matter jurisdiction as long as the application has been submitted to the Copyright Office prior to commencement of the lawsuit. *See Shady Records, Inc. v. Source Enterprises, Inc.*, 2005 WL 14920, at *8 (S.D.N.Y. Jan. 3, 2005) (Lynch, J.) ("courts have **routinely** considered pending applications as satisfying the registration prerequisite of § 411(a)) (emphasis added); *Prunté v. Universal Music Group*, 2007 WL 945401, at *40 (D.D.C. Mar. 30, 2007) ("**The more common practice** is for courts to allow suit to go forward as soon as the application has been completed and submitted to the Copyright Office, along with the deposit of the work in question and the fee") (emphasis added).[7] Thus, there is

---

[6] To our knowledge the Second Circuit itself has not weighed in on this issue.

[7] *See also Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 386-87 (5th Cir. 1984) ("In order to bring suit for copyright infringement ... one need only prove payment of the required fee, deposit of the work in question, and receipt by the Copyright Office of the registration application"); *EPM Communications, Inc. v. Notara, Inc.*, 2000 WL 1154315, at *1 (S.D.N.Y. Aug. 14, 2000) (McKenna, J.) (expressing view that plaintiff need not have obtained copyright certificate prior to bringing suit in order for court to have subject matter jurisdiction); *Lennon v. Seaman*, 63 F.Supp.2d 428, 432 (S.D.N.Y. 1999) (Sand, J.) (holding that jurisdictional prerequisite to bringing a copyright infringement action "can be met by filing an application for registration"); *Havens v. Time Warner, Inc.*, 896 F.Supp. 141, 142-43 (S.D.N.Y. 1995) (Leisure, J.) ("'[i]n order to bring suit for copyright infringement, it is not necessary to prove possession of a registration certificate. One need only prove payment of the required fee, deposit of the work in question, and receipt by the Copyright Office of a registration application'") (citation omitted); *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F.Supp.2d 147, 157 (E.D.N.Y. 2002) (Weinstein, J.) ("Actual certification by the Copyright Office is not necessary. A copyright holder may commence an action for infringement as soon as the Copyright Office has received a proper application, fee and deposit"), *aff'd*, 354 F.3d 112 (2d Cir. 2003); *Gable-Leigh, Inc. v. N. Am. Miss*, 2001 WL 521695, at *4 (C.D.Cal. April 13, 2001) ("The 'registration requirement' set forth in § 411...may be satisfied by adducing evidence that plaintiff has deposited the work in question and paid the registration fee, and that the Copyright Office has received plaintiff's application"); *Dielsi v. Falk*, 916 F.Supp. 985, 994 n.6 (C.D.Cal. 1996) ("The receipt of Plaintiff's application satisfies § 411(a)'s jurisdictional requirement, whether or not the application is granted or denied, and whether or not the application precedes or follows the alleged infringement"); *Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*, 81 F.Supp.2d 70, 72 (D.D.C. 2000) ("the court endorses the position that a plaintiff may sue once the Copyright Office receives the plaintiff's application, work, and filing fee"); *Forasté v. Brown University*, 248 F.Supp.2d 71, 78 (D.R.I. 2003) (finding acceptance or rejection of application by Copyright Office unnecessary to confer jurisdiction); *SportsMEDIA Tech. Corp. v. Upchurch*, 839 F.Supp. 8, 9 (D.Del. 1993) (finding district court had subject matter jurisdiction over copyright action where copyright applicant submitted application one day prior to filing suit for infringement); *Phoenix Renovation Corp. v. Rodriguez*, 403 F.Supp.2d 510, 514 (E.D.Va. 2005) ("Under the copyright laws, copyright registration is presumed to have occurred from the moment the owner of the copyrightable material delivers his application and filing fee to the Copyright Office"); *Iconbazaar, L.L.C. v. America Online, Inc.*, 308 F.Supp.2d 630, 634 (M.D.N.C. 2004) ("Adopting the view that filing of the completed application is sufficient" to confer subject matter jurisdiction on the court).

substantial support in the case law for the view that this Court has subject matter jurisdiction over a copyright infringement action such as this where Plaintiff submits (and the Copyright Office receives) a complete application for registration with the Copyright Office prior to commencing suit. Solengo plainly alleges in its Complaint that it had submitted its application with the Copyright Office (*i.e.*, had completed the application form, deposited the Document, and paid the fee) and that the Copyright Office actually received the application before Solengo commenced this lawsuit. *See* Complaint, at ¶ 18. Indeed, Solengo submitted its application on March 30, 2007, but did not bring this suit until April 2, 2007.

Accordingly, we respectfully submit that the Court has jurisdiction over this case and should deny Defendants' Motion to Dismiss.

### B. *The Scholarly Commentary, Statutory Framework and Policy Considerations All Support the View That the Court Has Jurisdiction*

In light of all the cases cited above, it is not surprising that *Nimmer on Copyright* ("*Nimmer*"), often referred to as the leading treatise on copyright law, takes the position that the better view of the law is that submission of the copyright application to the Copyright Office is sufficient to confer subject matter jurisdiction on the Court.[8]

As *Nimmer* explains, the broad approach "better comports with the statutory structure." Melville B. Nimmer, et al., *Nimmer on Copyright*, Vol. 2 (2006), § 7.16[B][1][a][i], at 7-157. Specifically, 17 U.S.C. § 411(a) provides that "no action for infringement...shall be instituted until...registration of the copyright claim has been made *in accordance with this title*." 17 U.S.C. § 411(a) (emphasis added). In light of the "in accordance with this title" language, *Nimmer* (and courts) have explained that it is important to look to other parts of Title 17 to determine what "registration" in this context means. In this respect, 17 U.S.C. § 410(d), 17

---

[8] *Nimmer* refers to this as the "broad approach." *Nimmer*, § 7.16[B][1][a][i], at 7-157.

U.S.C. § 408(a) and another portion of 17 U.S.C. § 411(a) itself are particularly illuminating.

17 U.S.C. § 410(d) provides as follows: "***The effective date of a copyright registration is the day on which an application, deposit, and fee***, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, ***have all been received in the Copyright Office***." 17 U.S.C. § 410(d) (emphasis added). Given the wording of this provision, *Nimmer* concludes that "there would seem to be no bar on the 'court of competent jurisdiction' before which the copyright infringement is pending from proceeding to adjudicate the adequacy of the submission to the Copyright Office" regardless of whether the Copyright Office has passed on it yet. *Nimmer*, § 7.16[B][1][a][i], at 7-157; *see also Forasté*, 248 F.Supp.2d at 77 ("The plain language of [Section 410(d)] suggests that the registration occurs *on the day* the Copyright Office receives all of the necessary application materials (application, deposit, and fee)").

To the extent that there is some ambiguity about whether Section 410(d) means that registration is complete upon application (as *Nimmer* and *Forasté* suggest), or only that registration certificates will be backdated to the day on which a completed application is received, Section 408(a) clarifies the meaning. 17 U.S.C. § 408(a) provides that "the owner of copyright or of any exclusive right in the work ***may obtain registration of the copyright claim by delivering to the Copyright Office*** the deposit specified by this section, together with the application and fee..." 17 U.S.C. § 408(a) (emphasis added). The plain language of this section, especially when viewed in conjunction with Section 410(d), suggests that registration is completed upon submission of the application, deposit and fee. *See Iconbazaar, L.L.C.*, 308 F.Supp.2d at 634 (reading Section 410(d) and Section 408(a) in conjunction to support a finding that Congress intended the jurisdictional requirement to be satisfied upon submission of the

8

completed application); *see also Shady Records, Inc.,* 2005 WL 14920, at *8 (holding that requiring the Copyright Office to determine the status of an application before granting the Court jurisdiction over infringement claims "would run counter to the statutory scheme").

Finally, 17 U.S.C. § 411(a) provides support for the view that Congress intended registration to be satisfied upon submission of the completed application. Section 411(a) provides:

> In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

17 U.S.C. § 411(a).

As the *Forasté* Court noted, "[t]his provision confirms that it is the submission of an application, deposit, and fee (rather than the issuance *vel non* of a registration certificate) that triggers registration for purposes of conferring standing to sue." *Forasté,* 248 F.Supp.2d at 77 n. 10. This provision is significant because it makes clear that a copyright infringement claim can be initiated even if the Copyright Office *rejects* the application. Since Congress obviously intended to allow an infringement claim to be initiated regardless of whether the Copyright Office accepted or rejected the application, it simply makes no sense to say that Congress also intended to force a Plaintiff to wait for a decision to be made (that is, the Copyright Office's decision is meaningless to the question of whether Plaintiff can sue because, win or lose with the Copyright Office, Plaintiff is entitled to his day in court).

Indeed, it is for this reason that *Nimmer* has argued that policy considerations support the broad approach and undermine the narrow approach. As *Nimmer* puts it:

> [G]iven that the claimant [at the time he has submitted his application] has done all that it can do, and will ultimately be allowed to proceed regardless of how the

> Copyright Office treats the application, it makes little sense to create a period of "legal limbo" in which suit is barred. In the words of one court, [the broad approach] "best effectuate[s] the interests of justice and promote[s] judicial economy."

*Nimmer*, § 7.16[B][1][a][i], at 7-157 (citation omitted); *see also Phoenix Renovation Corp.*, 403 F.Supp.2d at 515 ("The process of processing and evaluating a copyright application could be a lengthy one, during which time an infringing use may continue unchallenged if the owner is not allowed to begin suit") (citation omitted).

## II. Plaintiff Has Received a Certificate of Registration from the Copyright Office, Curing any Jurisdictional Defect to the Extent the Court Finds Such a Defect Exists

As noted above, the Copyright Office issued Solengo a Certificate of Registration for the Document on June 7, 2007. Thus, although we submit that the Court has subject matter jurisdiction over this dispute regardless of when the certificate was formally issued, to the extent that the Court is inclined to find otherwise, we respectfully submit that, now that the Copyright Office has issued a Certificate of Copyright, the Court should either (1) allow the case to proceed without requiring a formal amendment of the complaint; or (2) grant Plaintiff leave to amend the Complaint to reflect that the Copyright Office has issued the Certificate of Registration. *See Positive Black Talk Inc. v. Cash Money Records Inc.*, 394 F.3d 357, 366 (5th Cir. 2004) (allowing copyright case to proceed without formal amendment of complaint where jurisdictional defect had been cured); *J. Racenstein & Co., Inc. v. Wallace*, 1997 WL 605107, at *1 (S.D.N.Y. Oct. 1, 1997) (denying motion to dismiss for lack of subject matter jurisdiction and explaining that "[w]here an action is commenced without registration being effected, the defect can be cured by subsequent registration, and an appropriate amendment to the complaint may be made to provide the necessary basis for subject matter jurisdiction").

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a pleading "shall be freely given when justice so requires." F.R.C.P. 15(a). "The Supreme Court has interpreted Rule 15 to permit such amendments unless (1) the party seeking to amend has unduly delayed; (2) the party seeking to amend is acting with a dilatory motive; (3) the proposed amendment would cause undue prejudice to the opposing party; or (4) the proposed amendment would be futile." *American Medical Ass'n v. United Healthcare Corp.*, 2006 WL 3833440, at *3 (S.D.N.Y. Dec. 29, 2006), *citing Foman v. Davis,* 371 U.S. 178, 182 (1962). This standard is clearly satisfied here (*i.e.*, there has been no undue delay, as Solengo just obtained its registration certificate a few weeks ago; there is no basis to claim dilatory motive or undue prejudice; and the proposed amendment would cure any jurisdictional defect, and, therefore, would not be futile). Indeed, especially with respect to the "futility prong" above, granting leave to amend (or allowing the case to proceed without formal amendment) would serve the interest of judicial economy since there is no real dispute that the jurisdictional defect (if it exists at all) can be cured so that a court ultimately will have subject matter jurisdiction and need to decide the case on the merits. Accordingly, we respectfully submit that Defendants' Motion to Dismiss should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that this Court should deny Defendants' Motion to Dismiss.

Dated: June 25, 2007
      New York, New York

Respectfully submitted,

KOBRE & KIM LLP

By: _____
Michael S. Kim (MK-0308)
Jonathan D. Cogan (JC-4474)
800 Third Avenue
New York, New York 10022
Telephone:   212.488.1200
Facsimile:   212.488.1220

*Attorneys for Plaintiff*
*Solengo Capital Advisors ULC*